**Opinion issued May 19, 2016**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-15-00073-CV

—————————————

**CORNELIS P. WILLIG, Appellant**

**V.**

**MARCELA GUTIERREZ DIAZ, Appellee**

On Appeal from the 309th District Court
Harris County, Texas
Trial Court Cause No. 2014-16063

## MEMORANDUM OPINION

In this divorce action, appellant, Cornelis P. Willig, appeals the trial court's

order, which granted a special appearance in favor of appellee, Marcela Gutierrez

Diaz. In three issues on appeal, Willig argues that the trial court erred in granting

the special appearance because (1) he filed his petition for divorce in Harris County before Diaz filed her petition in the Netherlands; (2) he was entitled to an in rem divorce; and (3) the trial court's findings of fact and conclusions of law are not supported by any evidence.

We affirm.

## Background

In 2009, Willig married Diaz after meeting her in Columbia. In 2010, they moved to the Netherlands and resided in a home that Willig owned.[1] In January 2010, Willig traveled to Houston without Diaz[2] under an investor visa to incorporate his business, Dependable Industrial Automation Consultancy, USA, LLC.

On February 4, 2014, Diaz filed in a court in the Netherlands a petition for "accompanying arrangements," which sought temporary initial maintenance support. Diaz later filed a petition for divorce on March 28, 2014, in the Netherlands.

After receiving a temporary maintenance request from the Netherlands, Willig retained counsel in the Netherlands and responded to Diaz's suit. The trial court in

---

[1] Willig's amended petition states that Diaz was granted entry into the Netherlands contingent on her status as Willig's spouse.

[2] Willig's trial brief in support of his response to respondent's plea in abatement states that Diaz had previous trouble with immigration authorities.

2

the Netherlands issued temporary orders that Diaz would have exclusive use of Willig's home but that Willig would not be required to pay maintenance to Diaz.

While the proceedings in the Netherlands were ongoing, Willig retained counsel and filed an Original Petition for Divorce in Harris County on March 24, 2014, asking the trial court to grant him a divorce from Diaz and divide the marital property. Diaz responded to the petition with a special appearance, contending that the trial court did not have jurisdiction over her because she lives in the Netherlands, has had insufficient contacts with Texas, and that the assumption of jurisdiction over her would offend traditional notions of fair play and substantial justice. She also filed a plea in abatement arguing that Willig had not met the domiciliary and residency requirements prior to filing suit and that the trial court should abate the suit until the earlier-filed suit had been determined.

Willig amended his petition to seek an in rem divorce. He further requested the trial court to divide the estate that is located in Texas and to confirm his separate property. He then responded to the special appearance arguing that it was a simple divorce with no children, and, in contravention of his amended petition, he stated that he was not seeking property division. Willig maintained that the trial court had

jurisdiction to grant him an in rem status divorce based on section 6.308 of the Texas Family Code.[3]

After Willig testified at the special appearance hearing, the trial court granted Diaz's special appearance, stating that another court had assumed jurisdiction over the matter in the Netherlands. Willig filed a request for findings of fact and conclusions of law and a motion for new trial raising for the first time that he was the first to file for divorce. After not issuing findings of fact and conclusions of law, Willig filed a notice of past due findings of fact and conclusions of law. According to the trial court's docket sheets, Willig's motion for new trial was denied on January 7, 2015. Appellant filed his notice of appeal on January 19, 2015.

On April 16, 2015, we abated the appeal and directed the trial court to enter findings of fact and conclusions of law. Once the trial court provided its findings of fact and conclusions of law, we reinstated the appeal on June 4, 2015.

**In rem Divorce**

In his second issue on appeal, Willig argues that he was entitled to an in rem divorce. Specifically, Willig argues that because he met the section 6.301

---

[3] Texas Family Code section 6.308, entitled Exercising Partial Jurisdiction, provides, "A court in which a suit for dissolution of a marriage is filed may exercise its jurisdiction over those portions of the suit for which it has authority." TEX. FAM. CODE ANN. § 6.308 (West 2006).

domiciliary and residency requirements, he was entitled to a divorce pursuant to section 6.308 even if the trial court could not divide the marital property.

As a preliminary matter, we note that Willig relied only on section 6.308 of the Texas Family Code as a basis for the trial court to exercise jurisdiction over the divorce. Willig has never argued that Diaz has minimum contacts with the State of Texas. *See Curocom Energy LLC v. Young–Sub Shim*, 416 S.W.3d 893, 897 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (recognizing that Federal due process requires that the nonresident defendant have purposefully established minimum contacts with forum state, such that defendant reasonably could anticipate being sued there). Thus, we do not follow the traditional merits-based review of the order granting the special appearance and instead limit our discussion to sections 6.301 and 6.308 of the Texas Family Code.

**Family Code Section 6.301**

Family Code section 6.301 provides that a suit for divorce may not be maintained in this state unless, at the time the suit is filed, either the petitioner or the respondent has been:

> (1)    a domiciliary of this state for the preceding six-month period; and

> (2)    a resident of the county in which the suit is filed for the preceding 90-day period.

TEX. FAM. CODE ANN. § 6.301 (West 2006).

5

Section 6.301 is not jurisdictional, but it controls a petitioner's right to sue for a divorce; it is a mandatory requirement that cannot be waived. *See In re Green*, 385 S.W.3d 665, 669 (Tex. App.—San Antonio 2012, orig. proceeding); *Reynolds v. Reynolds*, 86 S.W.3d 272, 276 (Tex. App.—Austin 2002, no pet.); *McCaskill v. McCaskill*, 761 S.W.2d 470, 473 (Tex. App.—Corpus Christi 1988, writ denied) ("Though not jurisdictional, the residency requirement protects the interests of the [s]tate as well as the parties, and cannot be waived by the parties."); *In re Marriage of Lai*, 333 S.W.3d 645, 648 (Tex. App.—Dallas 2009, orig. proceeding) (holding that trial court cannot maintain suit for divorce unless residency requirements are met). Residency must be established as of the date the suit for divorce is filed; it is not enough that ninety days of residency will pass during the pendency of the divorce proceeding. *In re Rowe*, 182 S.W.3d 424, 426 (Tex. App.—Eastland 2005, orig. proceeding). The public policy behind these requirements is to prevent forum shopping by divorce litigants. *Reynolds*, 86 S.W.3d at 277. The issue of residency is a question of fact for the trial court, and its finding will not be disturbed absent an abuse of discretion. *Stallworth v. Stallworth*, 201 S.W.3d 338, 345 (Tex. App.—Dallas 2006, no pet.).

Typically, when the residency requirements have not been met, the trial court abates the suit so that either the petitioner or the respondent can meet the residency requirements. *See Green*, 385 S.W.3d at 670; *Reynolds*, 86 S.W.3d at 277 ("The

failure of a divorce petition to properly allege residency renders the suit subject to abatement."). Once a party files a plea in abatement, the trial court should abate the proceedings until at least one of the parties has completed the mandatory residency requirements. *Oak v. Oak*, 814 S.W.2d 834, 838 (Tex. App.—Houston [14th Dist.] 1991, writ denied); *Svensen v. Svensen*, 629 S.W.2d 97, 98 (Tex. App.—Dallas 1981, no writ) ("[T]he proper remedy in sustaining a plea in abatement is not to dismiss but to retain the case on the docket, so that when the impediment to prosecution of the suit is removed it may be revived."); *see also Hoffman v. Hoffman*, 821 S.W.2d 3, 5–6 (Tex. App.—Fort Worth 1992, no writ) (holding that trial court should abate until petitioner meets residency requirements, at which point petitioner may file amended petition showing compliance with requirements). When, however, the record indicates that neither party intends to reside in the county of suit, abating the suit will not cure a failure to meet the residency requirements. *See Green*, 385 S.W.3d at 670 ("Because neither party will ever meet the residency requirements, the impediment to the trial court going forward with the suit cannot be removed[,]" and dismissal is the proper remedy).

In Texas, "residency" is a question of fact. *Stacy v. Stacy*, 480 S.W.2d 479, 482 (Tex. Civ. App.—Waco 1972, no writ). Moreover, under Texas law, a person can have several residences. *See Snyder v. Pitts*, 241 S.W.2d 136, 138 (Tex. 1951). Although the term "residence" has a variety of meanings, depending on its context,

7

residence generally requires both physical presence and an intention to remain. *See Smith v. Bd. of Regents of the Univ. of Houston Sys*., 874 S.W.2d 706, 712 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (citing *Martinez v. Bynum*, 461 U.S. 321, 330, 103 S. Ct. 1838 (1983)). To be a resident, there must be an intent to establish a permanent domicile or home, and the intent must be accompanied by some act done in the execution of the intent. *Wilson v. Wilson*, 189 S.W.2d 212, 213 (Tex. Civ. App.—Fort Worth 1945, no writ). For purposes of the family code, being a "resident of the county in which suit is filed" means an actual, physical, continuous living in the county of suit by the party, for the specified ninety-day period, coupled with a good-faith intent to make that county home. *Cook v. Mayfield*, 886 S.W.2d 840, 842 (Tex. App.—Waco 1994, orig. proceeding).

The elements of the legal concept of "domicile" are: (1) an actual residence, and (2) the intent to make it the permanent home. *Snyder*, 241 S.W.2d at 139. "Residence," therefore, is a lesser-included element of the technical definition of domicile. *Id*.

On the issue of domicile and residency, the trial court made the following findings of fact:

> (5)  Petitioner never met the requirements of being a domiciliary of the State of Texas, but was present in Texas only for business related activity.

8

(7)    Petitioner is only renting a dwelling in Texas, but maintains a home in and is domicile[d] in the Netherlands.

(8)    Petitioner is a resident of and citizen of the Netherlands.  Petitioner resides at 2 Herman, Heijermanslaan, North Holland 2106ES Netherlands.

(16)   The Petitioner has not satisfied both of these requirements.  He is present in Texas only for business related activity.  He does not intend to establish a permanent domicile.

(17)   Thus failing to satisf[y] residency and domicile requirements as required by the Texas Family Code, the Petitioner is not entitled to proceed to obtain his divorce as an in rem divorce action under § 6.308 of the Texas Family Code.

The trial court also entered the following conclusion of law on this issue:

(1)    Petitioner's action for divorce is an action in rem, but he does not satisfy the residency and domicile requirements of § 6.301.  Petitioner is not entitled to have a divorce decree which grants the divorce under the provisions of Family Code § 6.308.

When a trial court issues findings of fact and conclusions of law in connection with its ruling on a special appearance, we review the findings of fact on legal and factual sufficiency grounds and the conclusions of law de novo.  *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).  We set aside a finding of fact only if the evidence would not enable a reasonable and fair minded finder of

9

fact to make the finding under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

The evidence presented to the trial court showed that Diaz currently lives in the Netherlands in a home that Willig owns and that she has not been to the United States since marrying Willig. The Netherlands' trial court's temporary orders referred to Willig's home as the marital home. Willig testified that he is a citizen of the Netherlands and, in the Netherlands, he owns a house and another piece of property with his sister and mother. He currently pays the mortgage and the utilities for his house in the Netherlands.

Willig testified that he came to the United States as an investor in 2010 to incorporate his business, but he acknowledged that he only slept in Texas between 30 to 40 nights of the year. In 2011, he may have spent 50 nights in Texas and in 2012, he estimates that he spent between 120 and 140 nights in Texas, but there was a lot of "in and out." In 2013, he stated that he spent six months of continuous time in Texas. He testified that his residence is in Harris County and that he has been domiciled in Texas for the required time periods.

Between 2010 and March 24, 2014, Willig would stay in a suite hotel. Around March 2014, the evidence shows that he signed a lease for an apartment and rented furniture. Willig testified that he used his driver's license from the Netherlands until

April 2014, when he obtained a Texas driver's license. His Texas driver's license lists his apartment as his address.

Willig also testified that he has lived in other locations all over the world as he has gone to various job assignments. Since 2010, he has visited Switzerland, Italy, Saudi Arabia, United Emirates, and Abu Dhabi. He stated that he lived temporarily in those other countries but has always returned to Texas. Willig also presented phone records of his Texas cell phone and records of IRS tax documents for his business.

We are mindful that Willig filed suit on March 24, 2014, and thus for residency, he had to show that he was a Harris County resident for the preceding 90 days, or December 24, 2013, and that he had been domiciled in Texas for the preceding six months, or September 24, 2013. Willig stated at the hearing that he did live in Texas for the preceding six months before filing suit. However, the trial court also heard conflicting evidence when Willig agreed that his visa shows that he entered the country on January 8, 2014. He further states in this trial brief in support of his response to Diaz's plea in abatement that "[t]wo days after [he] arrived in Houston, he was contacted by a lawyer she had hired in the Netherlands and was informed that she had filed for special maintenance, separation and divorce in the Netherlands." This statement indicates that he did not arrive in Houston until after Diaz's motion for temporary support was filed, which occurred on February 4, 2014.

11

Moreover, in his amended petition, Willig stated that he and Diaz ceased living together as husband and wife on or about January 8, 2014. Additionally, the evidence showed that Willig filed an affidavit with the Netherlands trial court on January 17, 2011, which stated that he "currently reside[s] at 2 Herman, Heijermanslaan, North Holland 2106ES Netherlands." Willig also admitted that he personally established a residence in Texas beginning on January 8, 2014, but this date does not meet the 90-day deadline from when suit was filed.

After considering all of the evidence, we conclude that the trial court's findings of fact supporting its conclusion of law that Willig did not meet the requirements in section 6.301 are supported by more than a scintilla of evidence, and the evidence supporting the findings is not so weak or so contrary to the overwhelming evidence that they should be set aside. Because the trial court heard conflicting evidence as to when and how long Willig lived in Houston and Harris County, as the sole judge of the credibility of the witnesses, we conclude that the trial court did not abuse its discretion after finding that Willig had not met the requirements of Family Code section 6.301, and thus could not bring a divorce action in Harris County. *See In re Marriage of Lai*, 333 S.W.3d 645, 648 (Tex. App.— Dallas 2009, orig. proceeding) (finding some evidence that neither party met statutory requirements to maintain divorce and thus trial court did not abuse its discretion in determining husband could not bring divorce action in Collin County).

12

**Family Code Section 6.308**

Even if Willig could meet the requirements in section 6.301 to bring a suit in Harris County, Willig still must show that the trial court had jurisdiction to grant a divorce. To establish jurisdiction, Willig relies on section 6.308 of the Texas Family Code, entitled "Exercising Partial Jurisdiction" which provides,

> (a) A court in which a suit for dissolution of a marriage is filed *may* exercise its jurisdiction over those portions of the suit for which it has authority.
>
> (b) The court's authority to resolve the issues in controversy between the parties may be restricted because the court lacks:
>
>> (1) the required personal jurisdiction over a nonresident party in a suit for dissolution of the marriage

TEX. FAM. CODE ANN. § 6.308 (West 2006) (emphasis added).

Section 6.308 allows a trial court to exercise jurisdiction over a portion of the suit for which it has authority. *Id.* The use of the term "may" indicates that the statute is not mandatory, but discretionary. *See Boots v. Lopez*, 6 S.W.3d 292, 294 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (holding language of section 6.308 is discretionary, not mandatory and, therefore, it is within trial court's discretion whether to exercise partial jurisdiction over case); *Mason v. Mason*, 321 S.W.3d 178, 180–81 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (explaining that court may grant a divorce to Texas resident but may not divide community property

13

if it lacks personal jurisdiction over the nonresident spouse); TEX. GOV'T CODE ANN. § 311.016(1) (West 2013) ("'May' creates a discretionary authority or grants permission or a power."); *Barajas v. Santiago*, No. 01–10–00914–CV, 2012 WL 760921, at *4 n.4 (Tex. App.—Houston [1st Dist.] Mar. 8, 2012, no pet.) (mem. op.) (recognizing that trial court had discretion to consider divorce portion of case even though it lacked subject matter jurisdiction over child custody determination); *In re Dawson*, No. 13–02–138–CV, 2002 WL 34231215, at *3 (Tex. App.—Corpus Christi Aug. 29, 2002, orig. proceeding) (holding that the language of the statute is discretionary). To prove the trial court abused its discretion, Willig must show the trial court acted without reference to guiding rules and principles, or, in other words, acted in an arbitrary or unreasonable manner. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). The fact that the trial court may decide a matter within its discretion in a different manner than we would does not demonstrate that an abuse of discretion has occurred. *See Southwestern Bell Tel. Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex. 1965).

Willig has not cited any authority that the trial court had to grant him a divorce or that the trial court necessarily abused its discretion when it declined to exercise jurisdiction over the case. Rather, Willig quotes paragraphs from *Mason v. Mason*, 321 S.W.3d 178 (Tex. App.—Houston [1st Dist.] 2010, no pet.) and *Dawson-Austin v. Austin*, 968 S.W.2d 319 (Tex. 1998), but does not explain how the authorities

14

require the trial court to grant his divorce. Moreover, neither of these cases support Willig's proposition that the trial court had to grant him a divorce, and the statute states otherwise by its use of the term "may." *See* TEX. FAM. CODE ANN. § 6.308.

Here, the trial court heard evidence that (1) divorce proceedings had already been initiated in the Netherlands; (2) a Netherlands' trial court had already exercised jurisdiction over both parties; (3) a Netherlands' trial court had issued temporary orders; (4) the marital home and presumably marital property is located in the Netherlands; and (5) evidence in the record suggests that if the trial court grants a divorce in Harris County, Diaz may be deported to her native country of Columbia.[4] Based on these facts, we conclude that the trial court acted within its discretion in declining to exercise jurisdiction over the proceedings. *See Dawson*, 2002 WL 34231215, at *3 (noting that trial court had discretion on whether to exercise partial jurisdiction and appellant failed to show abuse of discretion).

We overrule Willig's second issue on appeal.[5]

---

[4] In his response to Diaz's special appearance, Willig stated that he "should not be held hostage to the fact that a prior divorce petition was filed by Respondent in The Netherlands, thereby making her presence in The Netherlands unauthorized by its laws and subjecting her to deportation at any time." At the special appearance hearing, Diaz's counsel argued that Willig is trying to get divorced in Texas so that Diaz will no longer be properly living in the Netherlands and will no longer have rights. Willig also testified that if a divorce is granted, Diaz cannot stay in the Netherlands.

[5] Because we have concluded that the trial court did not abuse its discretion in finding that Willig did not meet the requirements under sections 6.301 or 6.308, it is unnecessary for us to address Willig's first issue or the portion of Willig's third issue on appeal that discussed findings related to comity. *See* TEX. R. APP. P. 47.1.

15

**Conclusion**

We affirm the trial court's order granting Diaz's special appearance.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.